# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO.: 5:18-CR-00593 |
| ) | |
| Plaintiff, ) | JUDGE: CHRISTOPHE A. BOYKO |
| ) | |
| v. ) | **SENTENCING MEMORANDUM** |
| ) | **AND MOTION FOR A BOOKER** |
| CARMEN DAMIANI, JR. ) | **VARIANCE** |
| ) | |
| Defendant. ) | |

Now comes the Defendant, Carmen Damiani, Jr. by and through his attorney George Keith and hereby submits the following sentencing memorandum:

The factual and procedural history of this case are thoroughly outlined in the Presentence Investigation Report ("PSR"). The parties have agreed to a total offense level of twenty-three (23) which is outlined in the PSR. The PSR's criminal history calculation has not been challenged by the defense.

Pursuant to *United States v. Booker*, 543 U.S. 220, 126 S. Ct. 738 (2005), the Court is authorized to impose a non-guideline sentence. The sentencing process must begin with a guideline calculation, the United States Sentencing Guidelines are merely advisory, and district courts are required to consider all of the factors listed in 18 U.S.C. §3553(a) in imposing sentence. The six (6) factors outlined in Section 3553(a) are:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed –

(3) To reflect the seriousness of the offense;

(4) To afford adequate deterrence to criminal conduct

(5) To protect the public from further crimes of the defendant; and

(6) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective matter.

The importance of, and rationale for, the post-Booker and Gall sentencing procedure described above has been summarized by the First Circuit Court of Appeals as follows:

> This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

*Gall v. United States*, 128 S.Ct. at 598

In this case Carmen Damiani represents an unusual set of factors. When the Court looks at the nature and circumstance of the offense, Mr. Damiani is a person with a disabling conviction who possessed firearms. That is not in question. Further, he did have a marijuana grow in his basement. Outlined in the PRS is a list of the awards Mr. Damiani has won in combat and an outline of the combat situations that have caused him to suffer a traumatic brain injury. Mr. Damiani enlisted in the U.S. Army in 1999 following his high school graduation. He served in the U.S. Army or in the National Guard until his discharge in 2012. On May 12, 2007 the Stryker tank that Mr. Damiani was in was destroyed as a result of an explosion (Picture attached.). He was critically injured. He received some medical treatment for a traumatic brain injury and a back injury. On May 17, 2007, five days later, he returned to his unit and was in a truck that was involved in an explosion. He believes his injuries were greatly exacerbated by that second explosion. He had returned to his unit after five days of treatment because he was concerned that his fellow soldiers would have less chance of survival without his presence. His commitment to the men he served with and the Country he served was so great that he went back into combat under dire circumstances.

The consequences of the traumatic brain injury are so severe that he has a one hundred percent disability with the Veteran's Administration and he is one hundred percent disabled by the Social Security Administration because he is unemployable.

One of the hallmarks of veterans of the kind of combat Mr. Damiani has experienced is that these gentlemen survived situations where the immediate presence of a firearm is the difference between life and death.

In addition to the traumatic brain injury he has a very severe case of post-traumatic stress disorder. One of the hallmarks of both of these is a lack of impulse control.

He was medicating the symptoms of his post-traumatic stress disorder with marijuana. It is not unusual that people with too much free time (i.e., permanent disabilities) find other things to do with their time. Mr. Damiani had begun to grow marijuana.

Mr. Damiani's criminal history begins at the time he was discharged from the Department of the Army and comes home with a traumatic brain injury. It does not appear that he has any criminal record before that time. Many of the criminal history points that he receives come from minimal 30-day confinement sentences that result in one point. The Court is aware from paragraph 38 of the PSR that the conviction for domestic violence is a result of his wife attempting to interfere with his harming himself. There is no question that Mr. Damiani has a criminal history. It would be argued that the criminal history category overstates his criminal history. Each of the charges would appear to involve some sort of acting out consistent with having a lack of impulse control.

In the present offenses, Mr. Damiani does not appear to have endangered or created a risk to any other person. There is no evidence on the record or before the Court that his possession of the firearm involved threats or potential harm to any other person. The marijuana grow he was involved with was in his home. The Portage County Detectives who searched his home testified that they were not aware of him prior to the day they went to search. They testified to this during the suppression hearing.

The letters of support from Mr. Damiani's neighbors are proof that he did not create an environment that was disturbing or offensive to his community. He was seen as a friend, a good neighbor and a helper.

Mr. Damiani has already been incarcerated since October 22, 2018. He has been in both the Mahoning County Jail and the Corrections Corporation of America Facility in Hubbard, Ohio. He believes he has been very sufficiently punished. In order to provide him with the care that he needs, there are several Veteran's Administration facilities that are designed to deal with his substance abuse issues, the PTSD that he suffers from and the physical problems that were created by the first and second explosion of the vehicles he was in. The Veteran's Administration is currently assessing him to determine which of those facilities is appropriate.

Mr. Damiani's veteran's disability payments and his Social Security Disability payments are the major source of income to the family. If he is incarcerated for any significant time they will cease and the parties will be bankrupt. They will lose the home and the property that they have worked so hard to establish and maintain. The progress Mr. Damiani has made towards putting his life together after his service to his country would be erased. After prison he would need the same treatment that he needs today. He would be starting all over again at a significant disadvantage.

Wherefore, it is respectfully requested that the Court consider a dramatic variance. It is requested that the Court vary downward to within a guideline range where the Court could essentially order some form of community confinement that would be house arrest and in addition the time at any given facility where he would then obtain the treatment he so desperately needs. He is aware that this is a dramatic request. The sentencing factors of 18 U.S.C. §3553(a) would be met by such a sentence.

The nature and circumstances of the offense are in many ways minor compared to the behavior of others. The Court is aware that the history and characteristics of Mr. Damiani are demonstrated by his service to his country before he was dramatically injured.

The sentence he is asking the Court to consider imposing would then meet the needs of the community in terms of his future conduct and his needs in terms of his ability to return to society.

Counsel argues that the offenses he is accused of are not nearly as serious as other forms of these offenses.

Mr. Damiani has spent a significant amount of time in jails where there is no programming available whatsoever. He would ask the Court to understand his commitment to whatever treatment is available to him.

This treatment is essential to protect the public from future crimes under any circumstances. Without treatment for his traumatic brain injury, his substance abuse disorder which is directly linked to the post-traumatic stress disorder and treatment for the post traumatic stress disorder he is potentially doomed to a life of acting out.

The treatment would once again be more effective in the civilian section than it would be in a department or bureau of prisons section. Wherefore, once again,

Mr. Damiani respectfully requests that the Court depart dramatically and issue a sentence that would meet these factors within 18 U.S.C. §3553(a).

Respectfully submitted,

\s\ GEORGE G. KEITH
GEORGE G. KEITH #0012606
Attorney for Defendant
135 Portage Trail
Cuyahoga Falls, OH 44221
(330) 929-4293
(330) 929-1796 (fax)

## PROOF OF SERVICE

A copy of the foregoing Sentencing Memorandum and Motion for a Booker Variance will be sent this 30th day of May 2019 by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

\s\ GEORGE G. KEITH
GEORGE G. KEITH #0012606
Attorney for Defendant